IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| AGUSTIN SANCHEZ | § | |
| | § | |
| v. | § | 2:11-CV-271 |
| | § | |
| UNITED STATES OF AMERICA | § | |

**REPORT AND RECOMMENDATION TO DENY
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Defendant AGUSTIN SANCHEZ has filed with this Court a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. On November 6, 2012, the Court held an evidentiary hearing on this motion. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge is of the opinion defendant is not entitled to relief and recommends the motion to vacate, set aside, or correct sentence be DENIED.

I.
FACTUAL AND PROCEDURAL HISTORY

Beginning in September 2007, defendant and his associates were suspected of supplying narcotics to other local drug dealers. *United States v. Sanchez*, 2:10-CR-008, "Presentence Report," doc. 216 [hereinafter PSR], pg. 6 (N.D. Tex. filed Oct. 4, 2010). In late 2009, defendant pled guilty in the Midland Division of the Western District of Texas to conspiracy to possess with intent to distribute 50 grams or more of crack cocaine. *United States v. Sanchez*, 7:09-CR-253-02, "Findings of Fact and Recommendation on Felony Guilty Plea Before the United States Magistrate Judge," pg. 1 (W.D. Tex. Nov. 24, 2009). The Western District Court sentenced defendant to a 150-year term of incarceration. *Id.*, "Judgment in a Criminal Case," doc. 69, pg. 2 (W.D. Tex. May 27, 2010).

While defendant was serving his sentence from the Western District conviction, an arrest warrant for him issued from this Court. In this Court, defendant was charged with conspiracy to commit a drug offense, possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and aiding and abetting in violation of 18 U.S.C. § 2. *United States v. Sanchez*, 2:10-CR-008, "Judgment in a Criminal Case," doc. 223, pg. 1 (filed Nov. 19, 2010). Defendant pled guilty to the possession with intent to distribute charge and received a sentence of 30 months' custody, such sentence to run consecutive to the 150-month sentence imposed in the Western District. *Id.*, pg. 2. Defendant did not appeal the conviction, but did file the instant Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody.

## II.
## DEFENDANT'S ALLEGATIONS

In support of his contention that his sentence was imposed in violation of the Constitution or laws of the United States, defendant contends,

1. He received ineffective assistance of counsel at the pre-trial stage.

2. He received ineffective assistance of counsel on appeal.

## III.
## MERITS

### A. Proving Ineffective Assistance of Counsel

In *Strickland v. Washington,* 466 U.S. 668, 689, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984), the Supreme Court established a two-part test for analyzing ineffective assistance of counsel claims. The *Strickland* test, which applies to ineffective assistance of counsel claims in guilty plea cases, requires a prisoner to demonstrate defense counsel's performance was both deficient and prejudicial. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985).

An attorney's performance is considered deficient if the attorney made errors so serious he or she was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment to the United States Constitution. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2064. That is, counsel's performance must have fallen below the standards of reasonably competent representation as determined by the norms of the profession. A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. *Id.* at 689, 104 S. Ct. at 2065.

In the context of a guilty plea, a defendant can satisfy the prejudice prong of *Strickland* by demonstrating that but for counsel's deficient performance, a reasonable probability exists that the defendant would not have pled guilty, but would have insisted on a trial. *Hill*, 474 U.S. at 58, 106 S.Ct. at 370. Similarly, in the context of a procedurally defaulted appeal, a defendant can satisfy the prejudice prong by demonstrating that "there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, [defendant] would have timely appealed." *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 120 S.Ct. 1029, 1035, 145 L.Ed.2d 985 (2000).

### *B. Counsel's Performance at the Pre-Trial Stage*

#### 1. Mr. Sanchez's Written Allegations

Defendant Sanchez's claim regarding ineffective assistance of trial counsel involves his sentence. According to defendant's motion, his attorney, the Assistant Federal Public Defender, Ms. Bonita Gunden, told him part of the plea agreement was that the sentence imposed by this Court would run concurrent to the sentence imposed by the Western District. ("Memorandum in Support of Motion to Vacate, Set Aside, or Amend Sentence Pursuant to 28 U.S.C. 2255," doc. 2 [hereinafter Memo], pgs. 15-16 (doc. 2) ("Movant agreed to enter a plea of guilty with the stipulation that the

sentence imposed would be concurrent")). In fact, the sentence imposed by this Court was ordered to run consecutively to the Western District sentence, and there is no indication from the written record of any agreement between defendant and the Government to the contrary. In his 2255 motion, defendant claims trial counsel (i) misrepresented the terms of the plea agreement or (ii) properly conveyed the terms of the plea agreement but failed to ensure the agreement proposed by the Government was put on the record and presented to the Court. (*Id.* at 15 ("Movant was coerced to enter into a plea of guilty by Ms. Gunden who misrepresented the terms of said agreement").

2.  Mr. Sanchez's Testimony

At the November 6, 2012, evidentiary hearing defendant was represented by an attorney. Both defendant and Ms. Bonita Gunden, defendant Sanchez's trial counsel, testified at the evidentiary hearing.

At the hearing, defendant Sanchez's testimony was at times inconsistent with not only his written 2255 motion but with other statements he made during his testimony. On direct examination, Mr. Sanchez indicated Ms. Gunden, his trial attorney, had told him she had spoken with the Assistant United States Attorney (AUSA) assigned to his case. Defendant said Ms. Gunden represented to him that there was an agreement between her and the AUSA that the sentence would run concurrent to the Western District sentence. The evidence, however, shows that after their initial meeting, Ms. Gunden drafted a sentencing memorandum for defendant. The memorandum was admitted at the hearing as "Government's Exhibit 2." The memorandum discusses both consecutive and concurrent sentencing possibilities and sets forth two scenarios. The first scenario assumes the amount of drugs set forth in count three of the incitement (the only count to which defendant pled guilty) is the only amount which will be used in calculating defendant's sentence. The second

scenario assumes that the amount of drugs set forth in all counts in the Indictment will be used in calculating defendant's sentence. The memorandum continues:

> Concurrent or Stacked Sentences:
> The Prosecutor has stated that if probation, in the presentence report includes relevant offense cocaine in the calculation for the guidelines, then she will recommend to the Court that the sentence in this case be served concurrently with the Midland sentence. That is because the co-defendants in this case were all sentenced based solely on the substantive count of conviction. So, if sentenced under Scenario #2, we are probably looking at a concurrent sentence. If sentence[d] under Scenario #1, sentences most likely will be stacked.
> Of course, at sentencing, under either scenario, we will ask that the sentences be served concurrently.

Government's Exhibit 2, pg. 2. Defendant testified he understood the sentence could go either way, but thought the sentence would be concurrent. Mr. Sanchez testified after the Plea Agreement issued, he noticed a stipulation to the Northern District and Western District sentences running concurrently was not in the Plea Agreement. He stated he became concerned, but that Ms. Gunden reassured him the sentence would be imposed concurrently. When the "concurrent" recommendation was not in the Presentence Report, defendant said he again asked Ms. Gunden about its absence. At that time, Ms. Gunden said it appeared as though the sentences would be consecutive and they would have to see what would happen. At sentencing, Ms. Gunden did not make any argument for the Court to order the Northern District sentence to run concurrent with the Western District sentence.

On cross-examination, however, Mr. Sanchez stated he was satisfied with Ms. Gunden's representation, he simply wanted her to present the issue of whether the sentences should run concurrently or consecutively to the Court at sentencing. Contrary to both his written representations and earlier testimony, defendant indicated Ms. Gunden never promised the two sentences would run concurrently. He likewise testified Ms. Gunden spoke with defendant about

her conversations with the AUSA but she never said she had an agreement with the Government regarding the issue.

### 3. Ms. Gunden's Testimony

Ms. Gunden, the Assistant Federal Public Defender, also testified at the hearing. According to Ms. Gunden, she and defendant talked about the possibility of the Northern District sentence running concurrently to the Western District sentence. Ms. Gunden stated she had spoken with the AUSA assigned to the case about such a possibility. The AUSA indicated to Ms. Gunden that if defendant was only held accountable for the amount of controlled substance set out in count three of the Indictment to which he pled guilty, then she would not agree to the sentences running concurrently. She additionally indicated, however, that if defendant was held accountable for all relevant conduct set forth in other counts of the Indictment, then she would seek permission to recommend the two sentences run concurrent. Ms. Gunden pointed to Government's Exhibit 2 (her sentencing memorandum to defendant) as the means by which she communicated these possible outcomes to defendant. Both Ms. Gunden and defendant testified they reviewed the entire sentencing memorandum and defendant was aware of the different possibilities. Ms. Gunden additionally stated she was in no position to make any kind of guarantees to defendant because she knew the Court would not be bound by any recommendation in the Presentence Report or by the government and she also knew the AUSA may not have been able to obtain approval to recommend the sentences run concurrently. Consequently, Ms. Gunden indicated she did not make any promises to defendant about what his sentence would be or how it would be imposed relative to the Western District sentence.

After Ms. Gunden's conversation with the AUSA and with her client, defendant pled guilty to count three of the Indictment. The Presentence Report (PSR) that issued following defendant's guilty plea recommended an upward departure on the Northern District sentence. At that point, Ms. Gunden testified, the circumstances of the case changed. She knew, based on her earlier conversations with the AUSA, that the Government would not recommend the sentences run concurrently. She also felt, based on her years of practice before the Court, the standard practice would be for the sentence to be imposed consecutive to the Western District sentence. Additionally, she knew, based upon her experience, that the Court often imposes an upward departure in the sentence when such is recommended in the PSR. Consequently, Ms. Gunden's strategy changed from what she deemed a lost cause of attempting to have the sentence imposed as concurrent to simply getting the lowest number of months possible on the sentence. *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) (holding an attorney does not render ineffective assistance by failing to make futile motions or objections). Ms. Gunden testified she spoke about this change in strategy with her client in a meeting she had with him on November 16, 2010, before the sentencing hearing. She told defendant, and defendant seemed to understand, that the best strategy would be to focus on having the length of the sentence limited rather than asking to have the sentence run concurrent to the Western District sentence.[1] On cross-examination, Ms. Gunden testified she never thought

---

[1] The Western District sentence was for 150 months' incarceration. *United States v. Sanchez*, 7:09-CR-253, "Judgment in a Criminal Case," doc. 69, pg. 2 (filed May 27, 2010, WDTX). Defendant received from this Court in his criminal case 30 months' incarceration. *Sanchez*, 2:10-CR-008, Judgment, doc. 223, pg. 2. With the two sentences running consecutively, defendant faces a total incarceration time of 180 months.

Although defendant was linked to several drug sales, he pled guilty only to one charge of possession with intent to distribute 83.3 grams of cocaine. *Id.*, "Indictment," doc. 1, pgs. 1-2, 4 (filed Feb. 2, 2010). The U.S. Probation Officer who prepared Mr. Sanchez's PSR only took into consideration the 83.3 grams of cocaine listed in the count to which defendant pled guilty. (PSR, doc. 216, pg. 8). This resulted in a base offense level of 16. *Id.*

Defendant had four co-defendants. One of those co-defendants, Antonio Trujillo, like defendant Sanchez, only pled guilty to one count of possession with intent to distribute methamphetamine. *United States v. Trujillo*, 2:10-CR-008-J, "Presentence Report," doc. 135, pg. 1 (May 7, 2010). Mr. Trujillo's sentencing range, however, was based upon the aggregate amount of drugs to which he was linked, not simply the drugs contained in the count to

defendant was confused about the proceedings or about what he was agreeing to. She never thought defendant had any question or confusion regarding the issue of whether the sentence would run concurrent or consecutive to the Western District sentence. Ms. Gunden testified defendant not only knew and understood the changed strategy going into the sentencing hearing but that he agreed with it.

### 4. The Evidence Does Not Establish Deficient Performance

Regarding the allegation Ms. Gunden misrepresented the terms of the Plea Agreement to defendant Sanchez, the Court finds Mr. Sanchez's hearing testimony and his version of events are not credible. First, the plea agreement, signed by defendant, does not contain any provision, and certainly no assurance, by the Government that the Northern District sentence will run concurrently to the Western District sentence or that the government will recommend it run concurrently. *Sanchez*, 2:10-CR-008, doc. 208, "Plea Agreement," (filed Sept. 2, 2010). The Plea Agreement signed by defendant Sanchez does, however, state "[t]he defendant fully understands that the actual sentence imposed (so long as it is within the statutory maximum) is solely in the discretion of the

---

which he pled guilty. *Id.*, pg. 9. Consequently, Mr. Trujillo's base offense level was 26. *Id.* at 10.
   Mr. Sanchez was linked to the same transactions to which Mr. Trujillio was linked. (Although not indicated in the Indictment, the crimes referenced in counts two and four occurred at Mr. Sanchez's residence). *Sanchez*, PSR, doc. 216, pgs. 6-7. If, however, the U.S. Probation Office in preparing Mr. Sanchez's PSR had treated Mr. Sanchez in the same manner it treated Mr. Trujillo (which appears to be what defense counsel and the AUSA discussed), Mr. Sanchez would have faced a base offense level of 26, as opposed to the base offense level of 16 he actually faced.
   Given defendant's criminal history category of IV, and a total offense level of 13 (the base level of 16 minus 3 levels for his acceptance of responsibility), defendant's sentencing guidelines range was 24 to 30 months of incarceration. If, however, defendant had instead started with a base offense level of 26, resulting in a total offense level of 23 after acceptance of responsibility, he would have faced a sentencing range of 70 to 87 months.
   Thus, there was a possible scenario in which defendant could have received an 87-month sentence to be served concurrently with the 150-month sentence, resulting in a total incarceration time of 150 months, as opposed to the total incarceration time of 180 months he actually received. Defense counsel testified she considered this scenario but intentionally did not pursue it because there was no guarantee the AUSA would be able to obtain approval to recommend the sentences run concurrently and there especially was no guarantee the district judge would accept such a recommendation and impose the sentences concurrently. Defense counsel's conclusion was that the possibility of the Court imposing the 87-month sentence consecutive to the 150-month sentence (for a total of 237 months' imprisonment) was not worth the risk of pursuing that route.

Court." *Id.* at 2. It is difficult to reconcile defendant's claim that the sentence was to run concurrent to the Western District sentence when the Plea Agreement makes no such guarantee and specifically says the sentence is within the court's discretion. More importantly, defendant at one point testified counsel never promised him anything regarding his sentence and that he understood imposition of the Northern District sentence could either be concurrent or consecutive to the Western District sentence.

In essence, defendant offers nothing more than his evidentiary hearing testimony in support of this contention. His testimony alone, which was itself contradictory, is insufficient to overcome the strong presumption that Ms. Gunden gave correct advice regarding the law and the "highly deferential" review of her representation. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Ms. Gunden flatly contradicted defendant's assertions. To the extent it impacts the Court's determination in this case, the Court accepts Ms. Gunden's testimony as true. The Court does not afford defendant's testimony the same weight. With nothing more than his contradictory and self-serving statements as support for his version of events, the Court finds defendant has failed to show, by a preponderance of the evidence, that his trial attorney misrepresented the terms of the Plea Agreement. *See Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000).

To the extent defendant Sanchez contends Ms. Gunden properly conveyed the terms of the Plea Agreement to him but failed to ensure the agreement proposed by the Government was made on the record and presented to the Court, the Court finds this contention meritless. Ms. Gunden testified, based upon her conversations with the AUSA, she understood the Government unwilling to recommend imposition of the sentence as concurrent because defendant was only held responsible for the amount of drugs contained in the count to which he pled guilty. She also knew the

consecutive or concurrent nature of the sentence was ultimately in the Court's discretion, and that the Court typically imposes such sentences consecutively. *See* United States Sentencing Guidelines Manual § 5G1.3 (2009) (establishing "[i]n any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment"). Defendant indicated he knew both outcomes were a possibility. Although Ms. Gunden did originally represent to defendant that she would present the issue to the Court at sentencing, *see* Gvt's Ex. 2, the Court accepts Ms. Gunden's testimony that her strategy changed after the PSR issued. Her focus shifted from requesting concurrent imposition of the sentence to obtaining the lowest amount of months of incarceration. The Court also accepts Ms. Gunden's testimony that she discussed this strategy with defendant and defendant understood and agreed to the strategy. Consequently, Ms. Gunden's failure to present the issue or to otherwise challenge imposition of the sentence as consecutive to the Western District sentence was the result of sound, informed strategy. The Court concludes, based upon the testimony before it, that Ms. Gunden's representation was not deficient.

## C. Counsel's Performance on Appeal

Defendant additionally contends he received ineffective assistance of counsel on appeal because trial counsel failed to file a notice of appeal, as he requested.[2] The Supreme Court has long held "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Flores-Ortega*, 528 U.S. at 477, 120 S.Ct. at 1035. Even if an appeal would not have any merit, an attorney's failure to file a requested notice of appeal is *per se* ineffective assistance of counsel. *Id.*, 120 S.Ct. at 1035. When a defendant is denied

---

[2] The defendant does not contend he was not aware of his right to appeal.

effective assistance of counsel on appeal, the reviewing court, upon a section 2255 motion, may order an out-of-time appeal. *United States v. West*, 240 F.3d 456, 459 (5th Cir. 2001). In order to demonstrate ineffective assistance of counsel, however, a defendant "has the burden to prove ineffectiveness by a preponderance of the evidence." *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000).

1. Mr. Sanchez's Written Allegations

In the brief in support of his motion, defendant states:

> Movant and Ms. Gunden spoke briefly in the Courtroom at the conclusion of the sentencing hearing. He requested that she file the required notice of appeal. She informed Movant that his issue was one of ineffective assistance of counsel and this could not be addressed on direct appeal. He told her to file the notice immediately. She visited with Movant afterwards and had a form for him to sign which she stated "regarded the appeal". Movant authorized this document and did not receive a copy as she did not have an extra copy. Movant assumed this was to proceed in the appeal.

(Memo, doc. 2, pg. 6). The document to which defendant refers was admitted at the evidentiary hearing as Government's Exhibit 3. That document, titled "Right to Appeal," contains as a header the case name, cause number, and date. It then states the defendant has been advised of his right to appeal, of his right to counsel on appeal, and of the ten-day deadline for a notice of appeal. (Gvt's Ex. 3, pg. 2). It continues that defendant "fully discussed with my attorney the potential issues for appeal." (*Id.*). Following this section is a section for defendant's attorney with two options—indicating it was either defense counsel's advice to appeal or not to appeal. (*Id.*). In this section, the option indicating it was Ms. Gunden's advice to not appeal the case has a checkmark next to it. (*Id.*). Then, there appears a similar section for the defendant to indicate that he has either advised his attorney to appeal or to not appeal the case. (*Id.*). In this section, the option indicating defendant had advised his attorney that he did not wish to appeal has a checkmark next to it. (*Id.*).

Directly to the right of the selected option reflecting no wish to appeal appears defendant Sanchez's signature.  (*Id.*).

### 2.  Mr. Sanchez's Testimony

During the evidentiary hearing before this Court, defendant testified he initially told Ms. Gunden he wanted to appeal in the courtroom, at which time Ms. Gunden stated he had a right to appeal on the issue of ineffective assistance of counsel.  After leaving the courtroom, Ms. Gunden and defendant Sanchez met in a holding cell.  There were other defendants in the cell at the time, some of whom may have also been Ms. Gunden's clients.  Ms. Gunden spoke to the defendants in general terms about appellate rights.  She then handed defendant Sanchez the "Right to Appeal" form (Government's Exhibit 3).  Defendant said that he thought he was checking next to the option indicating he *wanted* to appeal.  Defendant testified he had no difficulty reading or writing in English, but that he would not have agreed to not filing an appeal because he wanted to appeal, and in fact thought Ms. Gunden was appealing the case.

On cross-examination, defendant's testimony changed.  Defendant indicated that, at the time he signed the "Right to Appeal" form, he did not understand his rights and he did not know to indicate he wanted to appeal.  Defendant stated Ms. Gunden said she thought defendant did not need to appeal the case, so he signed the form in compliance with her advice.

### 2.  Ms. Gunden's Testimony

Ms. Guden also testified on this issue.  According to Ms. Gunden, she met with defendant after the sentencing hearing and discussed his appellate rights with him.  Ms. Gunden did not specifically recall whether other defendants were present at the time, but she testified as to her normal practice and procedure.  Ms. Gunden testified that after every sentencing hearing, she meets

with her client or clients and generally discusses a defendant's appellate rights. She indicated that she always informs a client of the same five things: (i) the ten-day deadline for filing a notice of appeal; (ii) that the case, if defendant wants to appeal it, would go to the next highest court, which is the Fifth Circuit Court of Appeals; (iii) that there must be a legal basis for an appeal; (iv) that, in a case where the defendant has pled guilty, a legal basis for an appeal is usually found in an adverse pre-trial ruling, an objection to a section of the PSR that was not resolved in defendant's favor, or the imposition by the Court of a sentence outside the guidelines range; and (v) that the standard of review in an appeal of a guilty plea case is abuse of discretion, which is usually very difficult to show. In these admonishments, Ms. Gunden testified, she also tells her client that if he has any questions or hesitations, then he should let her know and she will arrange a one-on-one meeting to further discuss the issue. She then hands the defendant a copy of the "Right to Appeal" form, which already has the completed case header on it, indicates what her advice is by checking the appropriate section, and then has the defendant check and sign as to what his wishes are. Ms. Gunden indicated that if a client ever indicates any desire to appeal the case, she files a notice of appeal.

Regarding defendant Sanchez specifically, Ms. Gunden stated defendant did not, in any way, indicate he was dissatisfied with his sentence and/or that he wanted to appeal. Contrary to defendant's testimony, Ms. Gunden stated she never told defendant the only issue for direct appeal was an ineffective assistance of counsel claim (as those claims are not traditionally presented on direct appeal), and she did not recall having any discussion with defendant regarding possible habeas corpus relief. Ms. Gunden finally stated she did not speak with either defendant or defendant's family after the day of the sentencing hearing. She did, however, send to defendant, at his unit of incarceration in Randall County, a letter, which was admitted at the hearing as part of Government's

Exhibit 3. The letter states,

> Dear Agustin:
> Enclosed please find copies of the Judgment in your case and the waiver of appeal. As we discussed, I will not file notice of appeal in your case.
> This completes my representation of you on this case. I wish you the best of luck!

It is signed by Ms. Gunden and dated November 22, 2010. The Judgment issued November 19, 2010. Defendant Sanchez denies ever having received this letter. Ms. Gunden testified, however, that defendant Sanchez did not leave the Randall County facility until mid-December of 2010. She also stated that if her office sends a letter to an inmate who is no longer incarcerated at the facility, the facility returns the letter to the office. The letter she sent to defendant was never returned.

### 4.  The Evidence Does Not Establish Deficient Performance

In deciding this issue, the statements made by the defendant in his pleadings and in his testimony versus the testimony of his trial attorney is determinative. The Court, having observed defendant's demeanor during his testimony and the inconsistencies throughout his testimony, finds defendant's testimony and the statements in his pleadings unpersuasive. Conversely, the Court accepts Ms. Gunden's testimony as true. The Court finds defense counsel thoroughly reviewed defendant Sanchez's appellate rights with him. Based upon the testimony of Ms. Gunden, defendant Sanchez knew and understood his appellate rights. The Court notes that even in a portion of defendant Sanchez's own testimony, which was contradictory and consequently inherently unreliable, defendant indicated he knew of his appellate rights and chose not to pursue an appeal because that was the course of action advised by counsel. Thus, while he may now wish he had chosen differently, the Court concludes, based upon the evidence before it, that an appeal was not filed in this case as a result of defendant's knowing and informed instructions to his attorney that

he did not wish to appeal. This conclusion is supported not only by the testimony at the evidentiary hearing but also by the documents before the Court, one of which contains defendant's signature on a page with admonishments of appellate rights and directly next to defendant's indication that he did not wish to pursue them. *See* Gvt's Ex. 3.

Because the Court finds Mr. Sanchez's claims not credible, the Court finds defendant Sanchez has failed to carry his burden of showing by a preponderance of the evidence that he received ineffective assistance of counsel on appeal. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065; *Montoya*, 226 F.3d at 408. Defendant has not demonstrated his attorney's performance was deficient. *See Strickland*, 466 U.S. at 689, 104 S.Ct. at 2064. Consequently, defendant's second point of error is without merit and should be denied.

## IV.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge that the Motion to Vacate, Set Aside, and Correct Sentence, filed by defendant AGUSTIN SANCHEZ be DENIED.

## V.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 30th day of November 2012.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).